**Anna PENK, et al., Plaintiffs,**

v.

**OREGON STATE BOARD OF HIGHER EDUCATION, Defendant.**

**Civ. No. 80–436–FR.**

United States District Court, D. Oregon.

Oct. 9, 1981.

Don S. Willner, JoAnn B. Reynolds, Willner, Bennett, Bobbitt & Hartman, Portland, Or., for plaintiffs.

Dave B. Frohnmayer, Atty. Gen., James J. Casby, Jr., Asst. Atty. Gen., Eugene, Or., for defendant.

## OPINION AND ORDER

FRYE, District Judge:

Plaintiffs seek to represent a class composed of all women faculty members who have taught or are teaching at Oregon's eight institutions of higher education from April 25, 1974 to the present. The defendant Oregon State Board of Higher Education (Board) operates the state-wide system of higher education composed of the University of Oregon, Oregon State University, Eastern Oregon State College, Portland State University, University of Oregon Health Sciences Center, Southern Oregon State College, Western Oregon State College, and Oregon Institute of Technology. Plaintiffs filed this action as a class action alleging violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e, et seq. Plaintiffs allege discrimination on account of sex with regard to pay, promotion, tenure, professional duties, sabbatical leaves, grant application support, adjunct appointments, appointments to administrative and decision-making positions, salary support, and grievance mechanisms. The plaintiffs seeking class certification represent five of the eight institutions. Plaintiffs seek injunctive relief and money damages.

Fed.R.Civ.P. 23(c)(1) requires the court to determine whether an action brought as a class action is to be so maintained. If the court determines that the action may be maintained by a class, the court may also undertake the task of defin-

ing the class. Such definition remains subject to changes and does not necessarily establish the class which will ultimately be bound by the judgment. *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460 (N.D.Cal. 1978).

█ ·The burden of establishing that the action may be maintained as a class action is on the plaintiffs. Plaintiffs must come forward with sufficient facts to present and raise questions for trial. Plaintiffs in this case have filed numerous individual affidavits detailing allegations of individual harm. Additionally, plaintiffs have presented class-wide statistics relating to the issue of class-wide discrimination. In making the class determination, the court is mindful that the record bearing on the merits is incomplete and that there may be facts going to the merits which are also relevant to the class action determination but without complete discovery are not available. The class determination cannot ·be treated or regarded by this court as a preliminary hearing on the merits.

The first step to be taken in a class determination is to decide whether or not the procedural requirements of Fed.R.Civ.P. 23(a) have been met.

Fed.R.Civ.P. 23(a) provides as follows:
"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The requirements of Rule 23(a) must be given careful attention. *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

*Is the putative class so numerous that joinder of all members is impracticable?*
Fed.R.Civ.P. 23(a)(1).

█ The putative class consists of approximately 1500 present members and 350 past members. This class is clearly too large to join all members.

*Are there questions of law and fact common to the putative class?*
Fed.R.Civ.P. 23(a)(2).

█ This part of Rule 23(a) encompasses the three-fold requirement that the representative plaintiffs (a) have an actionable claim sufficient to give rise to a justiciable controversy, (b) be members of a class on whose behalf the action is maintained, and (c) assert a claim raising issues common to the class. *Harriss v. Pan American World Airways*, 74 F.R.D. 24, 29 (N.D.Cal.1977).

█ Plaintiffs must present at least a minimal showing that the alleged discrimination is based on patterns and practices not special or unique to themselves and that the putative class has been similarly victimized by the same pattern or practice. As already noted, plaintiffs have submitted numerous individual affidavits detailing allegations of individual harm. Additionally, plaintiffs' have presented statistics tending to show a statewide pattern of disparity between men and women faculty members in promotion and access to upper echelon positions, in addition to pay differentials. All plaintiffs are female college and university teachers who seek to represent other female college and university teachers. A class action may be maintained to challenge a general course of discrimination even though different members of the class may have been affected in different ways and at different times and places. *Harriss v. Pan American World Airways, Inc., Id.*

█ Part of the Board's opposition to plaintiffs' motion for class certification is that the decisions of which plaintiffs complain are made solely at the institutional level and not at the Board level, and that therefore the Board is not liable for discriminatory practices of any given university or college. The Board admits, however, that it generates and sets forth policy decisions and guidelines. ORS 659.150 provides collateral support for plaintiffs in that it

mandates that the Board, not each individual institution, assure compliance with Oregon's law against educational discrimination. The degree to which the Board's policies are implemented and how they are implemented and whether there is a Board policy which promotes sex discrimination are all matters to be developed through discovery and raised at trial. The court is unable to say at this point where the decision making process begins and ends.

Defendant also contends that the geographical diversity and the autonomy enjoyed by each institution precludes a finding of a common question. In *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977), on a motion for class certification the Court expressed concern over the defendant's geographical dispersion into six separate establishments. The court reasoned that decentralized enforcement of six different affirmative action programs can lead to the inference that different questions of fact or law could be involved under each plan and its implementation. The existence of eight institutions under the management of the Board does not call for a flat rejection of a class action. See *Lamphere v. Brown University*, 553 F.2d 714 (1st Cit. 1977). The device of establishing subclasses under the umbrella of one class can be used to alleviate some of the practical problems associated with differences in proof.

There are questions of law and fact common to the putative class, and the requirements of Fed.R.Civ.P. 23(a)(2) are satisfied.

*Are the claims of the plaintiffs typical of the claims of the putative class? Fed.R.Civ.P. 23(a)(3).*

 There must be a nexus between the individual claims of the plaintiffs and the interests of the class. *Harris v. Pan American World Airways, Inc., supra.* The claims of the plaintiffs, however, need not be factually identical with the entire class. Community of interest requires that the claims of the plaintiffs and the claims of the putative class be grounded in the same legal theory and arise from the same practices. The importance of individual factors in decisions made concerning professionals does not, as the defendant suggests, negate the existence of typicality. See *Lamphere v. Brown University, supra,* and *Kohn v. Royall, Koegel & Wells*, 59 F.R.D. 515 (S.D. N.Y.1973). For the purposes of this ruling, the plaintiffs have made an adequate showing that the Board heads a state-wide system that practices sex discrimination. The fact that sex discrimination may manifest itself in different ways (tenure, pay, promotion, etc.) and may affect individual class members differently at different times and in different institutions does not preclude maintaining this action as a class action. The injunctive relief sought will, if granted, benefit the entire class, not just isolated individuals. The requirements of Fed.R. Civ.P. 23(a)(3) are satisfied.

*Can the plaintiffs adequately present the claims of any or all members of the class? Fed.R.Civ.P. 23(a)(4).*

 Adequate representation goes to the heart of the problem of binding class members to a judgment litigated in their absence. Rule 23(a)(4) requires judicial scrutiny into two matters: (1) the competency and experience of plaintiffs' counsel, and (2) the potential conflicts of interest or antagonism between plaintiffs' claims and those of the putative class.

 Plaintiffs' attorney, Don Willner, is an able, experienced trial lawyer who has handled many difficult legal matters, including class actions, in both state and federal courts. The court is satisfied beyond doubt of his skills and abilities and is also satisfied that he will and has chosen competent and skilled legal assistance.

The court must also be satisfied that plaintiffs possess the same interest and suffer the same injury as the class members. *East Texas Motor Freight v. Rodriguez, supra.* The injury claimed by all is sex discrimination. The interest shared by all is elimination of sex discrimination from the state system of higher education. The court fails to perceive any potential conflict of interest between the representatives and the class as a whole.

The energy with which the plaintiffs will prosecute this action is not seriously questioned. Plaintiffs have established a statewide organization, Faculty Women for Equity, to coordinate the efforts of those interested in this suit. They have held statewide meetings, raised funds, compiled and prepared the statistics presented with their motion. They have enlisted the support of faculty throughout the state. The court is convinced that the plaintiffs possess the requisite energy and zeal to adequately prosecute this claim as a class action.

The fact that plaintiffs represent only five of the institutions raises a question of adequacy of representation for the remaining three unrepresented institutions. Because it appears that the nature of the decision-making process differs from institution to institution, a representative, who is familiar with that process, is necessary if this action is to be maintained as a class action.

The requirements of Fed.R.Civ.P. 23(a)(4) are satisfied.

In addition to meeting the requirements of Fed.R.Civ.P. 23(a) discussed above, an action to be maintainable must also qualify under one of the subdivisions of Rule 23(b). The court will address only Rule 23(b)(2).

Fed.R.Civ.P. 23(b)(2) provides:

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;"

The Board contends that it has not acted on any grounds applicable to the class because it does not make any of the decisions of which plaintiffs complain. It claims the institutions make the decisions. Accordingly, it argues that any injunctive relief entered against it will not benefit the plaintiffs or the class.

The Board is given wide powers under the statutory scheme which provides for it. ORS 351, et seq. The legislature charged the Board with carrying out the function of administering the system of higher education. The several institutions are not given statutory autonomy for the decisions of which plaintiffs complain. The Board has represented that it does have a policy against discrimination on any basis. Whether this is in fact the case and the degree of effectiveness is a matter to be developed through discovery. The Board has consistently stated that it does set down general policy and guidelines for the institutions to follow; this is the connective factor joining all the schools, thereby making the Board the appropriate target.

Furthermore, the Board receives a single budget appropriation from the Legislature to distribute as it sees fit. There are no line items for each institution. The Board controls the allocation of money to the institutions. Additionally, there is one payroll system; all faculty within the state receive their paychecks from the Board, and the words, "Board of Higher Education" are imprinted on the checks themselves.

The Board operates on a system of delegated duties and responsibilities. The Board appoints the Chancellor who in turn appoints the institutional presidents, who in turn appoint the deans. Plaintiffs' attack is centered at the point where the delegation begins and at the manner in which the authority is implemented.

Title VII's definition of employer is broad in scope; it covers persons with 15 or more employees, engaged in an industry affecting commerce, and *any agent* of such a person. 42 U.S.C. § 2000e(b). This term has been construed as covering local school boards which operate numerous schools. See, *Harrington v. Vandalia-Butler,* 418 F.Supp. 603, *rev'd* on other grounds 585 F.2d 192 (6th Cir. 1978), *cert. denied* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660, *Mitchell v. Board of Trustees of Pickens County School Dist.,* 415 F.Supp. 512, *rev'd*

on other grounds 599 F.2d 582 (4th Cir. 1978).

Another factor in the court's consideration is *Hein v. Oregon College of Education*, No. 79–757FR (D.Or., filed 1979), still pending before this court. In that case Western Oregon State College (formerly Oregon College of Education) claimed, inter alia, it was not responsible for any alleged violation of the Equal Pay Act because it was bound by a mandate from the Board in setting salaries and salary increases.

From the facts presented to the court at this stage of the proceedings it appears that the Board is ultimately responsible for the operation and management of the State's institutions of higher education.

The requirements of Fed.R.Civ.P. 23(b)(2) have been met. This action is maintainable as a class action.

IT IS ORDERED that the class shall be certified as follows:

1. The class shall be certified only as to the Title VII claims.

2. Membership shall consist of all those women faculty members who:

a) were employed as instructor through professor; and

b) were employed on or after 300 days prior to the first EEOC charge filed for the class; and

c) have taught or are teaching at University of Oregon, Oregon State University, Eastern Oregon State College, Portland State University, University of Oregon Health Sciences Center, Southern Oregon State College, Western Oregon State College, or Oregon Institute of Technology.

3. The class shall consist of eight subclasses, one for each of the institutions of higher education.

4. The class shall be maintained as a 23(b)(2) action.

## CLASS REPRESENTATIVES

The next question for the court to determine is which of the plaintiffs shall be named class representatives. The Board has moved to dismiss certain plaintiffs as named plaintiffs and as class representatives. Each plaintiff against whom a motion has been filed shall be discussed separately.

## MADRONA HOLDEN

Madrona Holden filed a claim of *race* discrimination with the Oregon Board of Labor after this sex discrimination action was filed. The defendant Board argues that she should be required to elect between a state and federal forum and exhaust her administrative remedies. Plaintiff is entitled to seek redress in an administrative forum for *race* discrimination if she chooses without jeopardizing her claim for sex discrimination in this court. There is no election of remedies doctrine under Title VII. *Ortega v. Construction & General Laborers*, 396 F.Supp. 976 (D.Conn.1975). Defendant's motion is denied as to Madrona Holden.

## ANN MISCHLER

The last date upon which Ann Mischler claims to have suffered sex discrimination is December 15, 1979, the last day of her employment. On November 10, 1980 she filed a charge of sex discrimination with the Oregon Bureau of Labor. The Equal Employment Opportunity Commission (EEOC) received notice of this charge on November 21, 1980, 342 days after the alleged unlawful employment practice. Such charges must be filed with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e). Ann Mischler has failed to meet the jurisdictional time requirements for maintaining a claim of sex discrimination under Title VII. Defendant's motion to dismiss is granted as to Ann Mischler.

## MARGARET SIMERAL and ANN ANDERSON

Plaintiffs concede that Margaret Simeral and Ann Anderson have not met the Title VII filing requirements. Because of the court's ruling on the § 1983 claim, defendant's motion to dismiss is granted as to Margaret Simeral and Ann Anderson.

## JACKIE VIDGOFF

Jackie Vidgoff filed a charge of sex discrimination with the EEOC on February 23, 1981, alleging that the last act of discrimination occurred on June 16, 1980. Because Oregon is a deferral state, the EEOC was required to refer Dr. Vidgoff's complaint to the Oregon Bureau of Labor. This was done on May 25, 1981. No EEOC charge can be filed until the expiration of 60 days from the date of filing the charge with the deferral state agency, the Oregon Bureau of Labor. 42 U.S.C. § 2000e–5(c). 42 U.S.C. § 2000e–5(e) then requires the charge to be filed with the EEOC within 300 days of the alleged unlawful employment practice. Dr. Vidgoff's charges were not timely filed with the EEOC. *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Defendant's motion to dismiss is granted as to Jackie Vidgoff.

## MARGARET LUMPKIN

Defendant contends that Dr. Lumpkin is not a properly named plaintiff because she has not received her right to sue letter from the EEOC. Since briefs were filed and arguments held, Dr. Lumpkin has received a right to sue letter. Defendant's motion to dismiss is denied as to Margaret Lumpkin.

The court finds the remaining plaintiffs are proper class representatives. However, it is the court's opinion that the interests of the class require, under Fed.R.Civ.P. 23(a)(4) that each subclass be represented. The court requires improvement of representation for each subclass through intervention of additional parties. Plaintiffs have 60 days to add a representative party for each unrepresented subclass.

These additional subclass representatives need not have complied with EEOC filing requirements. A jurisdictional prerequisite for one who brings suit as a named plaintiff on behalf of a class is that the named plaintiff must have properly filed with the EEOC. *Inda v. United Air Lines*, 565 F.2d 554 (9th Cir. 1977) *cert. denied* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388. The issue is whether persons who have not complied with Title VII's filing requirements can be representative plaintiffs for subclasses if at least one other named plaintiff has timely filed and received a right to sue letter. *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968) is the only court that has directly decided the issue that now faces this court. In *Oatis* the court found that persons who had not timely filed could be representatives for their subclass, with the limitation that the claims that could be asserted were limited to the issues asserted by the plaintiffs who had timely filed.

The court adopts the holding set forth in *Oatis*. The court perceives no problem with allowing the subclass to be represented by persons who have not filed with the EEOC, but who could have filed. This will aid in the orderly presentation of proof at trial and will insure that the subclasses are adequately represented.

## DEFENDANT'S MOTION TO DISMISS § 1983 CLAIM

Defendant Board has moved to dismiss the § 1983 claim, contending that the Oregon State Board of Higher Education is, in effect, the State of Oregon, and that the State is not a "person" under § 1983.

The defendant's motion to dismiss the § 1983 claim is granted. In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) the Court stated that in enacting § 1983 Congress did not intend to override a state's traditional 11th Amendment immunity. The effect of this ruling is that the State of Oregon is not a person under § 1983. The question remains then whether or not the Oregon State Board of Higher Education is essentially the State. The Board is a creature that exists by virtue of statutory authority and is charged with administering the State's entire system of higher education. The Legislature, by statute, has delegated the power and authority to the Board to control higher education within the State. For the purposes of this ruling, the Oregon State Board of Higher Education is the State.

IT IS ORDERED that defendant's motion to dismiss the § 1983 claim is granted.

54

Counsel shall prepare the appropriate orders consistent with this opinion.