George CRAWFORD, and Charlie Brewer, et al., Plaintiffs-Appellants,

v.

UNITED STATES STEEL CORPORATION, and United Steelworkers of America, AFL–CIO, et al., Defendants-Appellees.

No. 79–2045.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 6, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Barry L. Goldstein, Washington, D. C., for plaintiffs-appellants.

D. Frank Davis, Cooper, Mitch & Crawford, Jerome A. Cooper, Birmingham, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, TJOFLAT and VANCE,** Circuit Judges.

GODBOLD, Chief Judge:

This is another in a long line of cases concerning the employment practices of United States Steel Corporation at its Fairfield, Alabama, Works during the late 1960's and early 1970's. Before us are various Title VII claims of 21 black employees who not only were eligible for backpay tenders under the nationwide steel industry consent decree approved in *U.S. v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), but also were members of the erstwhile "new *Ford* class" that was first before this court in *U.S. v. United States Steel*, 520 F.2d 1043 (5th Cir. 1976)

and was recently revived in *Ford v. United States Steel*, 638 F.2d 753 (5th Cir. 1981).

Dissatisfied with the relief afforded them in the consent decree in *Allegheny-Ludlum*, plaintiffs rejected the backpay tenders, received right-to-sue letters from the EEOC, and sued United States Steel (the company) and several locals of the United Steelworkers of America (the union). On January 27, 1978, nearly 16 months after the suit was filed but before discovery had commenced, plaintiffs moved to amend their complaint to allege a class action. Twenty-eight black employees of the company simultaneously moved to intervene.[1]

Before trial the district court denied the motions to amend and to intervene and granted summary judgment for the defendants on various claims of eight appellants.[2] At the close of plaintiffs' case the district court dismissed most of the remaining claims except those of four plaintiffs.[3] After defendants presented evidence to rebut those claims, the district court entered judgment in favor of defendants on those claims as well.[4] Plaintiffs appeal each of these rulings by the district court.

## I. Class Amendment and Intervention

 At oral argument plaintiffs' counsel conceded that, since both the motion to amend to allege a class and the motion to intervene were prompted by the decertification of the "new" *Ford* class and the denial of intervention in that case, there would be

---

** Honorable Robert S. Vance, Circuit Judge, participated in the hearing of the case but did not participate in the decision. The case was decided by a quorum.

1. Both of these motions were prompted by orders of the district court in *Ford v. United States Steel*, No. 66-625-S (N.D.Ala.) decertifying the "new" *Ford* class (Memorandum Opin., Oct. 13, 1977) and denying a post-decertification motion to intervene (Memorandum Opin., Dec. 20, 1977). Record at 29-42; 52-53. Plaintiffs' motion to amend alleged a class substantially the same as the one decertified in *Ford*, and the motion to intervene was filed by the unsuccessful intervenors in *Ford*.

2. Summary judgment for the union was granted with respect to the claims of plaintiffs Frederick Cox, Ned Crawford, Jimmy Dunson, Benjamin Hudson, Elester Skipwith, Sylvester C.

Wright, and Johnny Crawley. Summary judgment for the company was granted with respect to the claims of plaintiff Eugene Speed.

3. The district court dismissed all of the remaining claims of plaintiffs Frederick Cox, Milton Givan, Ned Crawford, Richard Mitchell, Eugene Speed, George Crawford, Charlie Brewer, Fermon Taylor, Lloyd Cain, T. J. Tolbert, Arthur Law, Jimmy Dunson, Dudley Williams, Benjamin Hudson, Sylvester C. Wright, Henry Hicks, Jr., and Clarence Duncan. The court dismissed some, but not all, of the claims of plaintiffs Esaw Cooks, Elester Skipwith, Paul Von Henderson, and Andrew Moore.

4. These were the various remaining claims of plaintiffs Cooks, Skipwith, Henderson, and Moore.

no need to decide these issues if the district court's order in *Ford* were vacated and remanded by this court. Since oral argument in this case another panel of this court has done so. *Ford v. United States Steel*, 638 F.2d 753 (5th Cir. 1981). Our reading of the opinion in *Ford* indicates that the parties and interests before the district court on remand in that case are identical to those presented in plaintiffs' motions to amend and to intervene. The lengthy and convoluted history of litigation over employment practices at Fairfield Works demands prompt and uniform resolution. *See Ford*, 638 F.2d at 762. Further litigation over the class and intervention issues present in this case would thwart this objective and serve the interests of none of the parties. We therefore affirm the district court's order denying amendment to allege a class and denying the motion to intervene but direct that these issues merge with those before the district court on remand in *Ford*. *See Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981).

## II. Summary Judgment

Before trial the district court granted summary judgment for the union with respect to the claims of seven plaintiffs[5] because they had never filed EEOC charges against the union. It also granted summary judgment for U. S. Steel with respect to the claims of plaintiff Eugene Speed because he had never filed an EEOC charge against the company.

■ Timely filing of EEOC charges is a prerequisite to a Title VII suit. *Wheeler v. American Home Products Corp.*, 582 F.2d 891, 897 (5th Cir. 1977); *Beverly v. Lone Star Construction Corp.*, 437 F.2d 1136, 1139–40 (5th Cir. 1971); *Miller v. International Paper Co.*, 408 F.2d 283 (5th Cir.

1969). However, we have held that in an action involving claims of several persons arising out of similar discriminatory treatment, not all of them need to have filed EEOC charges as long as one or more of the plaintiffs had satisfied the requirement. *Wheeler*, 582 F.2d at 897; *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968).

An examination of precedent coupled with the unique procedural history of this litigation leads us to conclude that the district court erred in granting summary judgment against these eight plaintiffs when several of their co-plaintiffs had filed EEOC charges against the company and the union.[6] In *Oatis* we held that each member of a class need not file an EEOC charge as a prerequisite to join a Title VII suit as long as at least one named plaintiff had filed such charges, 398 F.2d at 499. We extended *Oatis* to non-class suits in *Wheeler*, where we held that similarly situated intervenors who had not filed EEOC charges nevertheless could assert backpay claims if one or more of the original plaintiffs had filed timely charges. 582 F.2d at 897.[7]

■ While this circuit has not addressed the precise issue presented in this case—whether every original plaintiff in a multiple-plaintiff, non-class action suit must file charges with the EEOC—at least one circuit has held that the *Oatis* rationale applies. *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876 (8th Cir.), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). In *Allen*, only two of 15 plaintiffs had filed EEOC charges yet the court concluded that all 15 were entitled to assert their claims for backpay and seniority. 554 F.2d at 882–83.

---

5. *See* note 2 *supra*.

6. As best we can tell (the records and the briefs are unclear on this point), the company and the union do not question the timeliness of every EEOC charge filed by those plaintiffs who did file charges. This issue should be clarified on remand when the district court enters findings of fact with respect to those claims dismissed under F.R.C.P. 41. *See* Part III *infra*.

7. In *Hodge v. McLean Trucking Co.*, 607 F.2d 1118 (5th Cir. 1979), we affirmed the district court's refusal to certify a class or allow intervention by three persons who had failed to file an EEOC charge, but no one had filed an EEOC charge. The original plaintiff failed to file a timely charge and none of the would-be intervenors had filed.

We are persuaded that the result reached in *Allen* is required by our holdings in *Oatis* and *Wheeler*. Under *Wheeler*, if only those plaintiffs in this case who had filed timely charges sued and those plaintiffs who had failed to file intervened, the latter group of plaintiffs would not have been barred by the filing requirement. Defendants would have us hold that the claims of these latter plaintiffs are barred because they were co-plaintiffs instead of intervenors. The argument exalts form over substance, and we decline to accept it.

The union also argues that *Oatis* and *Allen* are inapplicable because the plaintiffs who failed to file charges are not "similarly situated" with those who did. While it is true that the plaintiffs worked in different departments at Fairfield Works the gravamen of their complaints is the same: they allege that they were given improper seniority dates and passed over for promotion because of their race and that the union failed to represent them adequately. Moreover, the fact that the plaintiffs worked in different departments does not mean they are not similarly situated. In *Oatis* the three named plaintiffs worked in different departments, and only one of the three had filed EEOC charges. 398 F.2d at 499. We nevertheless held that the claims of the other two named plaintiffs and those of the classes they represented were sufficiently similar to allow them to proceed based upon the EEOC charge that was filed.

Analysis of the purpose behind the EEOC filing requirement and of the unique history of the litigation out of which this case arises also favors our conclusion. The purpose of the filing requirement is to insure "that the settlement of grievances be first attempted through the office of the EEOC." *Oatis*, 398 F.2d at 498. This purpose is not served in the present case by requiring each of the several plaintiffs to file essentially identical charges. *Id.* The settlement channels furnished by the filing requirement have been thoroughly exhausted with respect to these plaintiffs. In addi-

tion to any settlement efforts triggered by the timely charges filed against the company and the union by some of the plaintiffs in this case,[8] the company and the union have already engaged in extensive settlement efforts with the EEOC over alleged discriminatory practices at the Fairfield plant during the time period involved in this case. *See U. S. v. United States Steel; U. S. v. Allegheny-Ludlum Industries, supra.* To dismiss the claims of one-third of the plaintiffs in this case because they failed to file EEOC charges is thus not only inconsistent with *Wheeler* and *Oatis* but also an unnecessarily harsh penalty for their failure to resort to settlement channels that were already filled with claims substantially similar to their own.

### III. Rule 41(b) Dismissals

At the close of plaintiffs' case the district court granted Rule 41(b) motions to dismiss by the company and the union with respect to all claims of 17 plaintiffs and some of the claims of the remaining four plaintiffs.[9] Although the defendants' briefs offer a myriad of grounds for these dismissals, the order of the district court is bereft of findings of fact and conclusions of law required by F.R.C.P. 52 and 41(b).

While the failure to make findings of fact and conclusions of law does not always necessitate a remand, *see, e. g., Armstrong v. Collier*, 536 F.2d 72 (5th Cir. 1976), we feel that a remand is appropriate here. The record before us is voluminous and the legal issues are complex. Indeed, in its motion to dismiss, the company alleged nine arguments ranging from subject matter jurisdiction to whether the plaintiffs had established a prima facie case.

Without findings and conclusions we are left adrift in a sea of conflicting factual allegations and alternative legal grounds for the dismissals of the claims of 21 persons. We therefore vacate that portion of the judgment based upon the Rule 41(b) dismissals and remand it to the district court to enter findings of fact and conclu-

---

**8.** *See* note 6 *supra.*

**9.** *See* note 3 *supra.*

sions of law based upon this or any supplemental record the district judge may deem necessary. *See Sellers v. Wollman*, 510 F.2d 119, 122 (5th Cir. 1975).

### IV. The Remaining Claims

The district court required the company to present evidence against some of the claims of plaintiffs Esaw Cooks, Paul Von Henderson, and Elester Skipwith. Both the company and the union were required to present evidence against some of the claims of plaintiff Andrew Moore. In a memorandum opinion the district court entered findings of fact and conclusions of law and judgment for the defendants on all of the claims.

■ Plaintiffs appear to concede, or to abandon any challenge, on most of these claims. Plaintiffs concede that the findings of fact with regard to Cooks' claim that he was discriminatorily denied the position of mobile equipment mechanic are not clearly erroneous. The district judge found that Cooks was not qualified to repair diesel engines, a job requirement for the position he sought. He had difficulty tuning gasoline engines, another ability required of mobile equipment mechanics. Finally, the person chosen for the job Cooks sought possessed the required qualifications. Conceding these facts is tantamount to conceding that Cooks failed to establish a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We therefore affirm judgment in the company's favor on his claim.

■ Plaintiffs also concede that the findings of fact with respect to Henderson's unsuccessful bids for the jobs of plate mill recorder helper and process observer are not clearly erroneous. The district judge found that the first job was only a temporary position and was filled by a black person and that Henderson was physically incapable of performing the second job. These findings support the district court's conclusion that Henderson did not establish a prima facie case. Judgment in the company's favor on these claims is therefore affirmed.

The only claim of plaintiff Skipwith against which the company was required to present evidence was a dispute over a one-day assignment in April 1973 when the line on which he regularly worked was shut down. Although plaintiffs challenge the district court's Rule 41 dismissal of some of Skipwith's other claims, they do not challenge the district court's disposition of his 1973 claim. On this claim we affirm the judgment for the company. *See Harris v. Plastics Mfg. Co.*, 617 F.2d 438 (5th Cir. 1980).

Both company and union were required to present evidence against the claims of plaintiff Moore arising out of his unsuccessful 1968 bid for the job of gantry craneman. He alleged that the job was awarded to whites with less seniority and that he was discriminatorily denied training as a craneman before 1968. The district court found that training as a craneman was a job requirement for the gantry craneman position and that since Moore had no training, he was not qualified and thus failed to present a prima facie case. With respect to Moore's claim that he was discriminatorily denied training, the district court concluded that Moore had never requested training until immediately before his unsuccessful 1968 bid and that when he requested it he received it. The district court also found that there was no evidence that an earlier request for training by Moore would have been futile. *See Teamsters v. U. S.*, 431 U.S. 324, 363–71, 97 S.Ct. 1843, 1868–72, 52 L.Ed.2d 396, 432–37 (1977).

■ Moore disputes the finding that he did not request crane training until 1968, contending instead that he requested such training several times between 1965 and 1968. Although Moore's testimony at trial supports this contention it conflicts with all of the other evidence presented on the issue, including his own affidavit filed with the EEOC shortly after his bid on the job was rejected. We have reviewed the testimony and evidence regarding Moore's claims and we are unable to conclude that the credibility resolutions and the subsidi-

ary findings of fact by the district court are clearly erroneous. Those subsidiary findings support the district court's ultimate finding that Moore's failure to receive training as a craneman and his unsuccessful bid for the gantry craneman position were not a product of discriminatory treatment. Consequently we affirm the judgment in the defendants' favor on his claim.

In summary we affirm the district court order denying plaintiffs' motion to amend to allege a class and the motion to intervene. We reverse and remand the entry of summary judgment against seven of the plaintiffs. The district court's Rule 41(b) dismissal of several of plaintiffs' claims is vacated and remanded. We affirm those judgments entered in defendants' favor after the full trial.

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.